## MEYER v. DOLLAR S. S. LINE.
### No. 12945.

District Court, W. D. Washington, N. D.
May 12, 1930.

On Rehearing May 31, 1930.

Winter S. Martin and Arthur Collett, Jr., both of Seattle, Wash., for libelant.

John Ambler, of Seattle, Wash., for respondent.

NETERER, District Judge.

Libelant, on November 21, 1929, signed articles for and entered upon a voyage on one of respondent's ships from San Francisco to Manila and return to the United States, a period of practically two months. The day before arrival at Honolulu, November 27, while off watch, on the after deck, libelant engaged in a "good-natured scuffle with a fellow shipmate," and received a painful injury to his leg. At Honolulu on November 28, by order of the officer in charge, he was removed and entered at the hospital at Honolulu, but was not discharged. The earned wage, $19.33, was tendered and refused; the total wage for the voyage is $150.50. On leaving the hospital, libelant returned to the United States on one of respondent's vessels. He demanded wages for the voyage, which were refused, and which he seeks to recover, and also prays a penalty of two days' pay for each day's wage unpaid.

By article VI of the Rules of Oleron, a sailor injured by his own willful miscon-

426

duct could not be cured at the expense of the ship, and might be discharged. Under the laws of Wisbuy, if injured on shore in the master's or ship's service, he was entitled to maintenance and cure, and, no doubt, if injured while off duty aboard ship, the same rule applies. Under the modern French Commercial Code (article 262), and in the United States, a seaman is entitled to wages and medical treatment, if sick, during the voyage, or injured in the ship's service. See The Osceola, 189 U. S. 159, 23 S. Ct. 483, 47 L. Ed. 760. And the cure would extend a reasonable time beyond the voyage. The Bouker No. 2 (C. C. A.) 241 F. 831; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171.

█ █ The libelant received his injury, not while engaged in an act of labor, but while subject to call as a seaman. See The Bouker No. 2, supra. The injury resulted, not from his vicious conduct inconsistent with good faith in the prompt discharge of duty in obedience to orders (The Ben Flint, 3 Fed. Cas. 183, No. 1299), but was from the seaman's free activity and conscious motion of his own will, aside from any obligation of his employment. It was not occasioned by error of judgment in discharge of an obligated act. The articles of his employment did not include any test of strength in which he was engaged, though friendly the contest, and was not with the consent or knowledge of the ship's officer. It was not while engaged in the discharge of an act in line of duty in the service of the ship. For willful misconduct he was not entitled to maintenance and cure, and, if the willful misconduct was not sufficient to warrant discharge (no intimation that it was is intended), the expense could be deducted from the earned wage during the voyage, and, if rightfully discharged, claim to wages for the voyage terminated, and, if not so discharged, deduction for wages during disability.

"Willful" may be said to be free activity inspired by conscious motion of the will; and "misconduct," it is said, implies fault beyond error of judgment, Smith v. Cutler, 10 Wend. (N. Y.) 590, 25 Am. Dec. 580; United States v. Warner, 28 Fed. Cas. 404; Citizens' Ins. Co. v. Marsh, 41 Pa. 386, and means deviation from duty, Louisville, E. & St. L. R. R. Co. v. Berry, 2 Ind. App. 427, 28 N. E. 714; Ringgold v. Crocker, 20 Fed. Cas. 813, No. 11843. Duty is the obligation of the employment. Crockett v. Barre, 66 Vt. 269, 29 A. 147.

"Seaman," no doubt, once meant a person who could hand, reef, and steer, a mariner in the full sense of the word. Changed conditions and necessities gave "seaman" an enlarged meaning. The cook and the surgeon, porters, chambermaids, and employees other than able seamen, have been included. Musicians, in The Sea Lark (D. C.) 14 F.(2d) 201; a bartender, in The J. S. Warden (D. C.) 175 F. 314; in The Baron Napier (C. C. A.) 249 F. 126, a muleteer; in The Buena Ventura (D. C.) 243 F. 797, a wireless operator. The term "seaman," however, has never been extended to include prize fighters, wrestlers, etc., but, no doubt, if employed as such to carry out some purpose of the ship, would be included. Libelant's employment was not a wrestler or a performer in any test of physical strength. While sailors are wards of admiralty and are rather excused than condemned for accidental mistakes while in the faithful and obedient discharge of duty (The Ben Flint, supra), the court, however, does judicially know that intelligence, status, and condition of seamen has progressed with the improved methods of navigation, and the reasons for such guardianship have been lessened, that a voyage now is made within two or three months that, within several generations, ordinarily required two or three years, and that the term "drunken sailor" has become obsolete in the American marine.

█ It may not be said that a seaman who engages in prize fistic encounter, or wrestling, or in any test of physical strength or agility, is engaged in discharge of any obligation in the shipping articles. The resultant test of physical strength was a personal matter, pleasure, or privilege while off watch and not in the discharge of any obligation under the articles. See Callon v. Williams, 4 Fed. Cas. 1080, No. 2324. See, also, Maclachlan's Treatise on Merchant Shipping (4th Ed.) 233.

█ The seaman was not discharged. Section 8382, Comp. St. (title 46, USCA § 703), and, until discharged, he was entitled to his wages earned or capable of earning during the voyage. Manhattan Canning Co. v. Wilson (C. C. A.) 217 F. 41. In the absence of proof of duration of disability, decree will go for wages for the voyage.

█ █ To the right of recovery can be added penalty of double pay only (title 46, § 596, USCA) when payment was withheld without reasonable cause. O'Hara v. Luckenbach (C. C. A.) 16 F.(2d) 681. Upon the record, sufficient cause, I think, appears to challenge the right to double pay under section 4529,

Rev. St. (46 USCA § 596). See, also, Halvorsen v. United States (D. C.) 284 F. 285.

An order may be accordingly presented.

### On Rehearing.

In a petition for rehearing it is made to appear that the court overlooked the allegation in the libel and the admission in the answer that libelant was in the hospital from November 28, 1929, to January 2, 1930, on which latter date he was discharged; and the statement in the memorandum, "in the absence of proof of disability decree will go for wages for the voyage," is not predicated upon fact. It was assumed that all of the facts were stated in the agreed statement, and since it is an admitted fact that libelant was disabled until the 2d day of January, decree should limit recovery to the period from November 21, 1929, to November 28, 1929, and from January 2, 1930, to January 13, 1930, a total of 18 days.