## AGUILAR v. STANDARD OIL CO. OF NEW JERSEY.

### No. 307.

Circuit Court of Appeals, Second Circuit.
July 6, 1942.

Writ of Certiorari Denied Nov. 16, 1942.

See —— U.S. ——, 63 S.Ct. 201, 87 L.Ed. ——

George J. Engelman, of New York City, for appellant.

Walter X. Connor and Kirlin Campbell Hickox Keating & McGrann, all of New York City (Vernon Sims Jones and Raymond Parmer, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

PER CURIAM.

This appeal turns upon whether a seaman may maintain a suit for maintenance and cure under the following circumstances. The ship was in port moored to a wharf, and the plaintiff got leave to go ashore to attend to personal business. To go to his destination he had to cross the premises of the Mexican-Petroleum Company at which the ship was moored; and, while he was coming back after finishing his business, he was struck by a motor truck and injured, about half a mile away from the ship. The district judge held that his right to maintenance and cure extended only to injuries suffered while he was engaged upon the ship's business and dismissed the complaint.

The outlines of the seaman's right to maintenance and cure have remained fairly constant from very ancient times; until Congress sees fit to change its incidents, the courts should enforce it as it is; it has already been generously supplemented by the Jones Act, § 688, Title 46 U.S.C.A. From the earliest times it was recognized that when seamen went ashore without leave and got hurt in a drunken brawl or the like, not only was the ship not liable but the master might discharge them. Article VI of the Laws of Oleron, 30 Fed.Cas. page 1174. In Article XVIII of the Laws of Wisbuy, 30 Fed.Cas. page 1191, the right to cure was stated to arise when the seaman was injured "in the master's or the ship's service"; but the master's power of discharge depended upon his going ashore "on his own head to be merry, and divert himself." In Article XXXIX of the Laws of the Hanse Towns, 30 Fed.Cas. page 1200, the right was defined as arising from injuries "in the ship's service"; and Article XL provided punishment for his absence "without leave." The Ordinances of Louis XIV, Articles XI and XII of Title Fourth of "Maritime Contracts," 30 Fed.Cas. page 1209, similarly conferred the right if the injury was "in the service of a ship," but again the power to discharge was conditional upon disobedience. Thus it will be observed that originally the power to discharge the seaman and the forfeiture of his right were treated alike; but that the two became distinguished in the Laws of Wisbuy, and that the seaman's right was limited to injuries suffered in the ship's service. This has been the accepted rubric since then down to Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 527, 528, 58 S.Ct. 651, 82 L.Ed. 993. The plaintiff is in error in supposing that Justice Story ruled otherwise in Reed v. Canfield, Fed.Cas.No. 11,641. In that case it is true that the mates had improperly decided to go ashore "to be merry, and divert" themselves, but they had ordered the seamen to row them from the ship; and the seamen were upon the ship's service because they had no choice but to obey orders. The notion was indeed carried so far in Meyer v. Dollar S. S. Line, 9 Cir., 49 F.2d 1002, as to deny the right for injuries suffered on shipboard when the seaman was playfully wrestling while not on watch; and it may be that this is. not consistent with our own decision in Holm v. Cities Services Transp. Co., 2 Cir., 60 F.2d 721. Be that as it may, it is not to be confused with the exception that a seaman forfeits his right to the cure of injuries suffered even on shipboard, if they are caused by his misconduct. Lortie v. American-Hawaiian S. S. Co., 9 Cir., 78 F.2d 819; The S. S. Berwindglen, 1 Cir., 88 F.2d 125; Barlow v. Pan Atlantic S. S. Corp., 2 Cir., 101 F.2d 697. A distinction based upon the same activities of the seaman ashore and on board ship is perhaps a priori not very reasonable; but it has from ancient times been true that what takes place on the ship may have different legal consequences from the same events on the land. Besides, the risks of even amusement on board ship are more contracted than those on land; and as to a seaman's private business, it can scarcely be said to be part of the ship's service in any sense. Be that as it may, with the doubtful exception of Hogan v. S. S. J. M. Danziger, 1938 A. M.C. 685, we have found no case holding that the right extends to such injuries, and a number of cases hold that it does not. Collins v. Dollar S. S. Lines, D.C., 23 F. Supp. 395; The President Coolidge, D.C., 23 F.Supp. 575; Smith v. American South African Line, D.C., 37 F.Supp. 262; Lilly v. United States Lines Co., D.C., 42 F. Supp. 214; Wahlgren v. Standard Oil Co., D.C., 42 F.Supp. 992, 1941 A.M.C. 1788.

The argument that as soon as the plaintiff had finished his business and started back to the ship, he went again into her service is untenable; the occasion for his return was the same as that for his leaving; i. e., his attention to his own business, not the ship's. Hennessy v. M. & J. Tracy, Inc., 4 Cir., 295 F. 680, was quite different; the seaman had to leave the ship after his discharge to be quit of the job. His position was like that of one who sleeps ashore and goes back and forth to work upon a harbor vessel; it is part of the business that he shall leave the ship at night and come back in the morning. The Bouker No. 2, 2 Cir., 241 F. 831.

Judgment affirmed.