## LORTIE v. AMERICAN–HAWAIIAN S. S. CO.

No. 7525.

Circuit Court of Appeals, Ninth Circuit.

Aug. 5, 1935.

Rehearing Denied Sept. 6, 1935.

C. H. Fish, of San Francisco, Cal., for appellant.

Louis T. Hengstler, Frederick W. Dorr, both of San Francisco, Cal. (Andros, Hengstler & Dorr, of San Francisco, Cal., of counsel), for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

Alleging negligence on the part of his fellow seamen in the testing and in the operation of a winch aboard the steamship Mexican, owned by the appellee, the appellant filed a libel in personam, asking for general damages of $25,000 for personal injuries. The appellant also filed an amendment to his libel, praying for an additional sum of approximately $863, as "maintenance and cure" since his discharge from the United States Marine Hospital at San Francisco.

The libel sets forth that on September 19, 1932, while the libelant was performing his duties as an able-bodied seaman aboard the Mexican, at the dock in Boston, a boom rest fell upon the libelant's left hand and wrist, causing "serious

and permanent injuries." In the record, it is explained that a boom rest is "a device with iron legs, in which the booms when they are at rest lie," and that the device weighs about 400 pounds. It is also explained that, before the hatches are battened down and the hatch covers and tarpaulins are adjusted, the boom rest is raised.

The details of the alleged accident, in substance, are thus set forth in the libel:

While the libelant, together with two ordinary seamen, Melby and Brynelsen, were working under the direction of the boatswain, Bustamente, and were raising No. 4 boom rest near the No. 4 hatch of the vessel, "entirely due to the negligence of the operator of said winch and of the said boatswain in ordering the operation of the winches in the control of the said No. 4 boom rest before testing or limbering up, the said winches were operated in a violent, sudden and negligent manner." As a result, according to the libel, "the said boom rest was suddenly hoisted from its sockets with a jerk, and the said A. Melby there and then abandoned his position at the winches while they were running, and the falls there and then engaged in said operation became recoiled or run afoul on their drums."

It is further alleged that the libelant thereupon was confronted with a "sudden emergency," etc., and that the boom rest fell upon his left hand and wrist. The appellant's testimony was to the effect that he was injured "while attempting to stop the winches."

The appellee filed an answer denying any negligence on its part, and alleging that, if the libelant received any injury, such injury was due entirely to the negligence of the libelant himself. As an additional defense, the appellee asserted that the appellant suffered an injury to his left hand and wrist while being engaged, when in a drunken condition, in a fight with another member of the crew.

The court below filed findings of fact and conclusions of law, and entered a decree dismissing the libel. From that decree the present appeal has been taken.

The appellant contends that "the Court erred in its findings of fact and conclusions of law," and that "the findings of fact are manifestly against the weight of the evidence and that the Court did not * * * hear all the witnesses [testify in open court], thus entitling libelant to trial de novo."

Since the sole conclusions of law made by the court below were that the libelant was not entitled to recover and that the respondent was entitled to a decree, which conclusions were amply supported by the findings of fact, it becomes necessary for us to determine the weight that we are to accord to the findings of the trial court.

The general rule on this subject was indicated by the late Judge Sawtelle, of this court, in the case of The Mabel, 61 F.(2d) 537, 540:

"The testimony, consisting of that of approximately seventeen witnesses, taken in open court, is highly conflicting; and even if we were inclined to differ with the learned trial judge who saw the witnesses, heard their testimony, and had opportunity of passing upon their credibility and accuracy, we would not be warranted in interfering with his findings of fact and conclusions, 'unless the record discloses some plain error of fact, or unless there is a misapplication of some rule of law.'" Cases cited.

The appellant, however, insists that "The Court did not in this case hear orally the witnesses," and again, in his reply brief, that "The trial court did not hear and see the witnesses, and the rule appellee is attempting to invoke does not apply."

These statements are quite erroneous. The record plainly shows that three witnesses testified by deposition, and nine, including the appellant and the man with whom he is alleged to have had a fight, testified in open court. Some exhibits were also introduced in evidence.

In such a situation, the findings of the trial court will not be disturbed, except for manifest error.

In The Beaver (C. C. A. 9) 253 F. 312, 313, 314, the court said:

"The entire mass of evidence upon which the trial court passed, with the exception of that of two or three witnesses for appellee taken on deposition, was heard in open court, with full opportunity for observation of the character and demeanor of the witnesses, and that evidence on all controverted facts was sharply conflicting. Such a case, notwithstanding a small portion of the evidence rests upon deposition, is to be regarded as well with-

in the reason of the rule that the findings of the trial court should not be disturbed, except for manifest error. [Many cases cited.] And we have examined the record sufficiently to satisfy us that there was evidence substantially tending to sustain the several findings and conclusions of the court below."

See, also, The Lake Monroe (C. C. A. 1) 271 F. 474; Grace v. Ellerman-Bucknall S. S. Co. (C. C. A. 3) 14 F.(2d) 902, 903; The Boston Maru (C. C. A. 9) 20 F.(2d) 508, 509; The Corapeake (C. C. A. 4) 55 F.(2d) 228.

In the instant case, the court below found that the appellant "became intoxicated * * * and while in such drunken condition * * * engaged in a fight with another member of the crew, * * * and thereby sustained an injury to his left hand and wrist; that said injuries were in no manner attributable to said respondent [appellee], but were caused by and were due entirely to libelant's own misconduct."

In the words of this court in The Beaver, supra, "we have examined the record sufficiently to satisfy us that there was evidence substantially tending to sustain" the finding just quoted.

In open court, O'Brien, who was quartermaster aboard the Mexican at the time the appellant received his injuries but who is no longer connected with the appellee, testified that, on the day in question, the appellant and Gunderson, an oiler, engaged in a fight while both "appeared to be pretty well intoxicated," and that the appellant struck some blows.

Charles Smith, who was a fireman on the Mexican at the time the appellant had the scuffle with Gunderson, but who was employed in a grocery store in Oregon at the time of the trial, testified, also in open court, as follows:

"Well, I know that on the day after he [the appellant] was supposed to have sustained an injury to his hand I met him on board the ship, and he was supposed to have returned that day from the hospital, I asked him what the trouble was with his hand and he told me he had broke a bone in it in an argument with a seaman named Gunderson."

When on the stand, the appellant himself testified that, referring to his hand, he told the chief mate that "An oiler just bumped into it a few minutes ago

and it is beginning to be a little sore." The appellant also admitted that on the day of the alleged accident he, Gunderson, and another member of the crew drank liquor together, that he became "warmed up," and that he "hooked" Gunderson "around the neck and gave him two or three slaps," after Gunderson had "bumped into" his hand three times.

Appellant, in his reply brief, concedes that, "as to the legal questions involved in this appeal there is no contention as to the correctness of the principles enunciated in the cases cited by the appellee," but he insists that the controversy centers around "the application to the facts of this case."

That being so, and the court below having found the facts against the appellant after having heard most of the witnesses in open court, we do not feel disposed to disturb the decree. There can be no question that, if the appellant was injured during a drunken brawl, he can recover neither damages nor maintenance and cure. The Alector (D. C.) 263 F. 1007; Meyer v. Dollar S. S. Line (C. C. A. 9) 49 F.(2d) 1002, 1003–1004.

Decree affirmed.