### BENTLEY v. ALBATROSS S. S. CO., Inc., et al.

### THE CHRISTIAN BERGH.

### No. 155 of 1950.

United States District Court
E. D. Pennsylvania.

March 31, 1952.

Milton M. Borowsky, of Freedman, Landy & Lorry, of Philadelphia, Pa., for libellant.

Thomas F. Mount, of Rawle & Henderson, of Philadelphia, Pa., for respondents.

BARD, District Judge.

This is a seaman's action in admiralty for damages for personal injuries and for maintenance and cure. On the basis of the pleadings and the testimony, I make the following special

### Findings of Fact.

1. Libellant is Clifford C. Bentley, an American merchant seaman.

2. Respondents are Albatross Steamship Company, Inc., a New York corporation which operated and controlled the S.S. Christian Bergh, and the S. S. Christian Bergh, a Liberty ship which at the time this suit was instituted was within the jurisdiction of this Court.

3. Libellant is an able bodied seaman who was employed aboard The Christian Bergh.

4. About 5 or 6 P.M. on November 25, 1948, while this vessel was in the port of Pireaus, Greece, libellant went ashore and drank heavily of beer and fairly strong cognac.

5. As a result of his drinking, libellant became drunk or intoxicated.

6. Between 8 and 9 P.M. that evening, libellant started back to the vessel. He waited on the dock for over half an hour for transportation to the vessel, during which time he became wet and chilled from sleet and rain.

7. Upon his return to the vessel, libellant went into the recreation room and sat down in a swivel chair about twelve inches from a steam radiator.

8. This radiator was of standard design found in Liberty ships of this type, and was located in the customary place. When the steam is turned on at normal pressure, the

temperature in this radiator would be approximately 230° Fahrenheit. There was no evidence to show whether this radiator was turned on or off.

9. No covers or guards are placed about this or any other radiator aboard this vessel, although on some Liberty ships metal covers or guards do surround the radiators.

10. The temperature of the recreation room was normal or the same as always.

11. Fifteen or twenty minutes after he sat down, and because of his intoxicated condition, libellant "passed out" or became unconscious, slumped onto the radiator, was unable to get up and felt no pain.

12. Some time later fellow crew members discovered libellant lying on the radiator.

13. Libellant suffered third degree burns on both hands and on the right side of his face and approximately one-half his right ear was burned away.

14. Upon being found libellant was taken immediately to the ship's hospital and the captain was notified. The captain thereupon summoned a Greek physician who treated libellant four times while the vessel remained in Greece. Libellant chose to return to the United States on the vessel instead of remaining in Greece or being put off at Gibraltar for further treatment of his burns. Libellant remained in the ship's hospital for the remainder of the voyage. Libellant removed the bandages from his hands, contrary to the advice of the captain, and requested penicillin treatments which were given him.

15. The Christian Bergh arrived in Baltimore, Maryland, on or about December 28, 1948.

16. Libellant went immediately to the United States Public Health Service Hospital in Baltimore where he was admitted as a patient. While in this hospital skin was grafted from his thighs onto his left hand and onto the right side of his face.

17. On January 22, 1949, libellant was granted a two day leave from the hospital; however, libellant remained out over leave. On January 25, 1949 he was discharged from the hospital as absent over leave and in a markedly improved condition.

18. Libellant subsequently was treated twice at a clinic operated by a Dr. Lyons of Claymont, Delaware. Thereafter, libellant kept exercising his left hand to get it limbered up and strengthened.

19. Libellant returned to work on May 13, 1941, and has been working full time ever since.

20. Libellant has permanent scars on both hands, a two by four inch scar on the right side of his face, and a partially destroyed right ear. The right ear and the lines of the scars on his left hand are sensitive at times. Libellant wears leather gloves while working to protect his hands from possible further injury. Libellant did not suffer any impairment of working ability or earning capacity.

21. At the time of his injury aboard The Christian Bergh, libellant was earning approximately $302 per month including wages, overtime and bonus.

### Conclusions of Law.

1. This Court has jurisdiction of this case.

2. The S. S. Christian Bergh was seaworthy.

3. Respondents were not negligent.

4. Libellant's injuries resulted solely from his intoxicated condition and, therefore, were caused solely by his own gross and wilful misconduct.

5. Respondents furnished libellant adequate medical care after his accident.

6. Libellant is not entitled to recover damages or maintenance and cure. Barlow v. Pan Atlantic S. S. Corporation, 2 Cir., 101 F.2d 697; The S.S. Berwindglen, 1 Cir., 88 F.2d 125; Lortie v. American-Hawaiian S. S. Co., 9 Cir., 78 F.2d 819.

7. The libel is hereby dismissed with costs.